[No. 12619-6-III.   Division Three.   January 27, 1994.]

THE CITY OF OKANOGAN, *Respondent,* v. CITIES INSURANCE ASSOCIATION OF WASHINGTON, *Appellant.*

*John Hotchkiss* and *Fuller, Cassel, Beuhler & Hotchkiss, P.S.,* for appellant.

*Owen Gardner* and *Mansfield, Reinbold & Gardner,* for respondent.

SWEENEY, J. — Cities Insurance Association of Washington (Cities) appeals a summary judgment in favor of the City of Okanogan awarding coverage for losses incurred during the Cities policy period and for attorney fees. Cities contends the losses were foreseeable and therefore do not qualify as "occurrences" covered by the policy. We agree, reverse and grant judgment for Cities.

I

In October 1988, three property owners sued the City of Okanogan and the Washington State Department of Transportation (DOT). The property owners are holders of irrigation water rights from the west channel of the Okanogan River. Following a flood in 1948, the Army Corps of Engineers constructed a dike which closed off the west channel of the river and installed a 24-inch culvert to allow sufficient water flow to reach the west channel water users. Okanogan undertook various engineering projects on the west channel between 1948 and 1962, in the process reducing the width of the channel from 80 feet to its present width of less than 8 feet. In

1962, Okanogan conveyed to DOT an easement to construct Highway 20 and a bridge over the Okanogan River; during construction of the highway and bridge, DOT extended the 24-inch culvert to over 100 feet in length and filled in the west channel under Highway 20.

The property owners' complaint alleges that Okanogan improperly built another culvert which, in conjunction with the inadequately maintained DOT culvert, prevented the west channel properties from receiving sufficient water to satisfy their state-authorized permits; this resulted in crop damage during the years 1985 through 1988 because of insufficient irrigation. The complaint was amended in 1989 to include allegations Okanogan was negligent in failing to dredge the channel and this negligence also contributed to the present and future crop losses. By the amended complaint, the property owners also sought damages resulting from the devaluation of their land caused by loss of irrigation water and irrigation rights, as well as loss of aesthetic and sportsman values. The Okanogan City Council had been informed of the water problems in the summer of 1985. During the next 3 years, Okanogan and DOT investigated the irrigation problems and considered possible solutions.

Okanogan's insurance carriers from 1985 through 1988 (defending insurers)[1] organized to defend the suit following service of the complaint. Soon after the complaint was filed, Okanogan began negotiations with Cities[2] for a new general liability policy. During negotiations, Cities was aware of the pending complaint and the nature of the claims against Okanogan. Cities concluded that the alleged negligent conduct of Okanogan and any resultant damages would not be covered "occurrences" under its policy. On the basis of this belief, Cities agreed to cover Okanogan effective November

[1] Cigna Insurance Company, Fireman's Fund Insurance Company and Twin Cities Fire Insurance Company.

[2] An association of over 100 municipalities who had entered into an interlocal agreement for the purpose of sharing deductibles of jointly purchased insurance policies.

1, 1988, approximately 1 month after the property owners filed suit against Okanogan.

In March 1990, Cities received a request that it participate in the defense from Okanogan's other insurance carriers. The request was based on allegations that damages had occurred during the Cities' policy period. Cities refused to participate in the defense, maintaining that any damages incurred during its coverage period would be the expected, foreseeable result of earlier acts of negligence (prior to November 1988) and, as such, would not fall within the policy definition of "occurrence".

In October 1990, Okanogan reached a settlement with the property owners, which was reduced to judgment on November 21, 1990. Okanogan agreed to pay the property owners a total of $32,000 for damages incurred between 1985 and 1990. The defending insurers agreed to reimburse Okanogan for all but $12,975 — an amount representing damages incurred during the period of Cities' coverage. Cities refused to contribute to the settlement.

On August 23, 1991, Okanogan brought an action against Cities and the defending insurers for the unreimbursed settlement sum, for bad faith against Cities, and attorney fees and costs. Cities and Okanogan filed cross motions for summary judgment. The court concluded that the events alleged in the property owners' complaint were covered occurrences, and granted Okanogan's motion.

## II

Cities contends the events giving rise to Okanogan's liability occurred prior to the effective date of its policy and therefore were not "occurrences" under the provisions of the policy.

### A

■ Because this matter was resolved by summary judgment, we engage in the same inquiry as the trial court. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 518, 826 P.2d 664 (1992). A summary judgment may be granted only when the record demonstrates there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). We consider the evidence in a light most favorable to the nonmoving party. *Farrare v. Pasco*, 68 Wn. App. 459, 462, 843 P.2d 1082 (1992). Summary judgments should be granted only if reasonable minds could reach but one conclusion. *Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993).

## B

The Cities policy defines "occurrence" as

an accident, event or error or omission during the policy period, including injurious exposure to conditions, which results in **personal injury, property damage, or errors** and **omissions** neither expected nor intended from the standpoint of the **Insured**.

Okanogan argues the damage suffered by the property owners was the result of a continuing process initiated by the alleged improper construction of culverts but exacerbated by various factors over the years, including improper maintenance of the culverts and slough, the latter occurring during the Cities coverage period. Cities contends the damages were foreseeable because they followed 3 years of crop damage alleged to have resulted from the same causes, with no real attempt by Okanogan to eliminate or diminish those causes.

■ "An insurance policy is a contract whereby the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event." *Time Oil Co. v. CIGNA Property & Cas. Ins. Co.*, 743 F. Supp. 1400, 1412 (W.D. Wash. 1990). This "event" is called an "occurrence" in most liability policies when damages result or are discovered during the policy's coverage. *Gruol Constr. Co. v. Insurance Co.*, 11 Wn. App. 632, 633, 524 P.2d 427, *review denied*, 84 Wn.2d 1014 (1974). However, if an event causing loss is not contingent or unknown prior to the effective date of the policy, there is no coverage. *Time Oil*, at 1412.

Several Washington cases have defined the limits of liability coverage based on the foreseeability of damage. In *Tieton*

*v. General Ins. Co. of Am.*, 61 Wn.2d 716, 380 P.2d 127 (1963), the town of Tieton constructed a sewage lagoon next to private property which included a well. The town had been advised that seepage was a normal and expected result of sewage treatment. The town council had been specifically warned by a sanitation engineer that the well could become contaminated. As in the present case, property owners complained to the town when contamination resulted. Tieton's liability policy with General Insurance Company covered only that injury to property caused by an "accident". Giving the term its popular and ordinary meaning, the court stated that "accident" meant "an undesigned and unforeseen occurrence . . .". *Tieton*, at 721. The trial court ruled the event was covered. On appeal, the Supreme Court reversed, ruling that the damages were foreseeable and predictable: ·

> Respondent was advised thereby that a potential hazard of pollution existed and that a damage suit against respondent would follow such contamination. The materialization of these possibilities cannot reasonably be held to be an accident within the meaning of the insurance policy.

*Tieton*, at 724.

Okanogan attempts to distinguish *Tieton*, arguing that Okanogan's negligent maintenance of the culverts did not lead, as a matter of fact, to foreseeable, expected damage to the west channel property owners. It argues that the damage more closely corresponds to the "continuing process" of injury discussed by the court in *Gruol*, at 636. We disagree.

In *Gruol*, dry rot began as the result of negligent backfilling — earth was pushed against exposed wood. The construction company's two insurers asserted the "accident" or "occurrence" which caused the damage occurred prior to the effective dates of their policies, and therefore was not covered. "Occurrence" was defined by both policies as "continuous or repeated exposure" which causes unexpected or unintentional injury. *Gruol*, at 634. Noting that dry rot is an invisible, slow process of decay, this court held that without actual knowledge of the improper backfilling, the damage caused by dry rot was *not foreseeable*. Further, as a "continu-

ing process", damage was occurring during periods in which all insurance policies were in effect after the initial negligent act and continued until the process was "discovered". *Gruol*, at 633, 636.

Okanogan argues that the damage to the west channel properties was part of a *Gruol*-type continuing process of unexpected, unintended damage initiated by the negligent construction of the culverts. However, Okanogan's reliance on the "continuing process" in *Gruol* is misplaced. *Gruol*'s process of decay went undetected during the coverage periods; therefore, the court found that the insured had neither actual nor reasonable notice of possible damage. The trigger for insurance coverage "is not whether [the] insured intended or expected the event resulting in the damage but whether he intended or *expected the damage resulting from the event.*" (Italics ours.) 46 C.J.S. *Insurance* § 941, at 285 (1993).

It is true that a *Gruol*-type process may have occurred during the coverage periods of Okanogan's insurers from 1985 through 1988 and that damages during that period may have been unexpected. The issue here, however, is not whether the damages occurring during the Cities policy period were part of an unexpected continuing process, but whether Okanogan had been put on notice of the damage occurring in 1989 and 1990 by the pending lawsuit and the earlier claims. Clearly, it had.

The history of complaints and unsuccessful attempts to remedy the problem render further crop damage and devaluation of the west channel properties in 1989 and 1990 normal and expected results. *Gruol*, at 635.

Accordingly, we reverse the trial court's summary judgment and award of attorney fees in favor of Okanogan and grant summary judgment for Cities.

THOMPSON, C.J., and SCHACHT, J. Pro Tem., concur.