45 P.3d 610 (2002)
111 Wash.App. 477
AMERICAN STATES INSURANCE COMPANY, Respondent/Cross Appellant,
v.
SYMES OF SILVERDALE, INC. dba Symes Cigar Bar; Evergreen Restaurant Development, Inc., dba Symes Family Restaurant; Symes of Port Orchard, Inc.; McKenzies of Puyallup Inc.; Thomas R. Lepre aka Lennie Lepre, Defendants,
Kathryn Ellis (in the capacity as Bankruptcy Trustee), Appellant/Cross-Respondent.
No. 26472-2-II.
Court of Appeals of Washington, Division 2.
May 3, 2002.
*612 Thomas Lether, Clarke, Bovingdon, Cole, Mills, Lether, Pc, Scott Michael Collins, Clarke, Bovington, Cole, Seattle, for Respondent.
Kennard M. Goodman, Ryan, Swanson & Cleveland, Seattle, for Appellant.
*611 BRIDGEWATER, J.
Kathryn A. Ellis, Symes of Silverdale's bankruptcy trustee, and American States Insurance Company both appeal the trial court's orders denying Ellis' motion for partial summary judgment and granting in part American States' cross-motion for partial summary judgment. This is an action to determine whether an insurance company owes policy proceeds to a bankruptcy estate when the insured company's loss occurred because of arson, possibly caused by the company's officer.
We hold that bankruptcy law places the trustee (or debtor-in-possession) in the same shoes as the debtor; state law, not bankruptcy law, determines contractual terms between the parties, even if one is in bankruptcy and, thus, the insurer can raise an arson defense against the trustee in bankruptcy. Further, we hold, following the Supreme Court's holding in Ellwein v. Hartford Accident & Indem. Co., 142 Wash.2d 766, 15 P.3d 640 (2001), that the insured, here the estate in bankruptcy, had the burden of showing that there was no reasonable basis for the insurer's action; that both the insured and insurer agreed that the business was destroyed by arson, a defense if committed by the insured, with the only fact in dispute being the identity of the perpetrator. Thus, the insurer had reasonable grounds to dispute the coverage-determining facts and there was no possibility of bad faith on its part. The insurer was entitled to summary judgment on the bad faith claim. We affirm in part, reverse in part, and remand for trial on the claim.

FACTS
Our commissioner granted both Kathryn A. Ellis, Symes of Silverdale's bankruptcy trustee, and American States Insurance discretionary review of the separate issues they each raised. Trustee Ellis' issues on appeal are (1) whether American States wrongfully denied her claim for insurance proceeds after arson destroyed Symes and consequently whether federal law applies to allow a bankruptcy *613 trustee to recover insurance proceeds resulting from a debtor-in-possession's intentional wrongdoing committed after the bankruptcy petition is filed and (2) whether the trial court erred in not declaring Symes' insurance policy property of its bankruptcy estate. American States' issue on appeal is whether Trustee Ellis' bad faith claim against it should have been dismissed under the summary judgment standard recently set forth in Ellwein. This court consolidated the parties' appeals for consideration.
On April 9, 1997, Symes, a family restaurant and sports bar located in Silverdale, Washington, filed a Chapter 11 bankruptcy petition for reorganization. Before filing the bankruptcy petition, Symes obtained an insurance policy from American States that was effective from March 10, 1997, until March 10, 1998. On March 10, 1998, Symes renewed this insurance policy with American States. The renewal policy, which was effective March 10, 1998, until March 10, 1999, included an increase in policy limits on Symes' personal property at the restaurant. Symes was a named insured and paid the policy's premiums.
On June 3, 1998, a fire severely damaged Symes. The Bureau of Alcohol, Tobacco and Firearms determined that the fire was incendiary and that there were no signs of forced entry. On June 4, 1998, the bankruptcy court heard a creditor's motion to convert the matter to a Chapter 7 liquidation and, with knowledge of the fire, it ordered conversion of Symes' bankruptcy proceedings from Chapter 11 reorganization to Chapter 7 liquidation.[1] Symes' president, Thomas R. Lepre, acting on behalf of Symes, initiated the claim for property and business interruption losses with American States. To determine coverage under the policy, American States conducted an independent investigation.
On June 9, 1998, after converting Symes' bankruptcy proceedings to Chapter 7, the bankruptcy court appointed Ellis as Symes' trustee. Ellis, as trustee for Symes' bankruptcy estate, took responsibility for the insurance claim with American States. The insurance policy proceeds are Symes' only significant asset.
In March 1999, American States denied Ellis' claim for coverage under the policy for the following reasons: (1) the fire was intentionally set by or at the behest of Symes; (2) the trustee's proof of loss was fraudulent; and (3) Symes failed to cooperate. American States later filed a declaratory judgment action in which it alleged that Lepre set fire to the restaurant. Trustee Ellis responded with breach of contract, Consumer Protection Act violation, and insurance bad faith counterclaims against American States.
On January 14, 2000, Trustee Ellis moved for partial summary judgment to dismiss American States' claim that it properly denied coverage based on arson. Ellis argued that even if Lepre set the fire, his actions as a debtor-in-possession could not be attributed to the estate because arson is outside the scope of the debtor-in-possession's authority.
I. Trustee Ellis' Appeal
The first issue is succinctly stated by the trustee in bankruptcy: "If an insured corporation declares bankruptcy, continues to operate as a debtor-in-possession, and then one of its officers intentionally burns its property, does the estate in bankruptcy have a right to recover for the loss from the bankrupt corporation's insurance?" Brief of Appellant at 8. Trustee Ellis asserts that federal law preempts state law and that under federal law, Symes' bankruptcy estate cannot be bound by the debtor-in-possession's unauthorized acts.
As American States notes, this is an issue of first impression. There are no Washington cases and the federal cases are few, with none from the Ninth Circuit.
A. Choice of Law
American States argues that state law should apply because state law controls contracts *614 and property interests and this is a breach of contract claim. Trustee Ellis, on the other hand, argues that the issue is not one of contract, but one of capacity controlled by federal bankruptcy law.
The United States Constitution expressly grants the federal government the power to make uniform laws regarding bankruptcy. U.S. CONST. art. I, § 8, cl. 4. Where the Constitution expressly grants power to the federal government, any state statute that conflicts with federal law must yield to the federal rule of law. U.S. CONST. art. 6. A state has no power to make or enforce any law that conflicts with federal bankruptcy laws. Int'l Shoe Co. v. Pinkus, 278 U.S. 261, 263-64, 49 S.Ct. 108, 73 L.Ed. 318 (1929). Thus, state court decisions that define property rights are not binding on federal bankruptcy courts when they are contrary to the policy and proper construction of bankruptcy laws. In re Lahman Mfg. Co., 33 B.R. 681, 687 (Bankr.D.S.D.1983).
While federal law creates a bankruptcy estate, the right to recover proceeds from an insurance policy is determined from the insurance policy itself. See 11 U.S.C.A. § 541 (commencement of a bankruptcy case creates an estate); In re Light (Dery v. Citizens Ins. Co. of Am.,) 23 B.R. 482, 483 (Bankr.E.D.Mich.1982) (right to recover on an insurance policy is determined by the rights provided by the contract of insurance). The bankruptcy trustee's interest in a debtor's insurance policy is no more or no less than the debtor's interest, for the trustee stands in the debtor's shoes. Light, 23 B.R. at 484. This is consistent with the proposition that state law should be used to decide property and contract issues that state law would govern absent a bankruptcy context. In re Madeline Marie Nursing Homes, 694 F.2d 433, 439, 438 (6th Cir.1982). Thus, Washington law must control whether the trustee can recover. Further, the trustee brought a breach of contract action under the insurance policy and asked the trial court and this court to determine the rights and liabilities of the parties under that contract.
Therefore, Trustee Ellis is correct that federal law clearly controls the creation of a bankruptcy estate and a debtor-in-possession's duties and capacity. But state law governs insurance policies as contracts absent a conflict with federal bankruptcy law. We see no conflict with federal law and hold that we are to look at Washington law to see whether the trustee can recover.
B. Whether the Insurance Policy is Part of Symes' Bankruptcy Estate
Because neither Trustee Ellis nor the bankruptcy estate was a named insured on the policy, we address whether the policy is a part of Symes' bankruptcy estate. When a debtor files a petition for bankruptcy, all of the debtor's property becomes property of the bankruptcy estate. In re Jones, 768 F.2d 923, 926 (7th Cir.1985). The bankruptcy estate is thus comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). The definition of "property of the estate" is intentionally broad so as to allow the bankruptcy court to administer completely all of the debtor's property, no matter how tangential the debtors interest in the particular property. Harvey R. Miller & George A. Davis, The Interplay of Insurance Companies & The Bankruptcy Code, 659 PLI/COMM 247, 271-72 (1993), citing United States v. Whiting Pools, Inc., 462 U.S. 198,103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The underlying theory of 11 U.S.C.A. § 541 is to bring into the bankruptcy estate all the debtor's property interests as of the date the case is commenced. Jones, 768 F.2d at 926 (citing 4 L.P. KING, ed, COLLIER ON BANKRUPTCY § 541.06 (15th ed.1985)).
Proceeds of an insurance policy qualify as property of the estate. See 11 U.S.C.A. § 541(a)(6) (property of the estate includes "proceeds, product, offspring, rents or profits of or from property of the estate"). Also included in the bankruptcy estate is property a debtor acquires after the commencement of the case until it is closed, dismissed or converted to a case under Chapter 7, 11, or 12. 11 U.S.C.A. § 1306; See In re Hoffpauir, 258 B.R. 447, 454 (Bankr.D.Idaho 2001) (casualty insurance policy itself and its proceeds qualify as property of the estate).
*615 With fire insurance, because it "represents a means for the debtor to insure its own property against loss or destruction, numerous courts have held, often without extensive analysis, that a debtor's fire insurance policies as well as the proceeds payable thereunder constitute property of the estate." The Interplay of Insurance Companies, 659 PLI/ COMM at 278 (citing e.g., Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 996 (5th Cir.1985); In re Hawkeye Chem. Co., 71 B.R. 315, 319-20 (Bankr.S.D.Iowa 1987) (debtors all risk policy and proceeds received thereunder are property of the estate); In re Feiereisen, 56 B.R. 167, 169 (Bankr.D.Or. 1985); In re Costa, 54 B.R. 22, 23 (Bankr. D.N.J.1985) ("It is well settled that money payable as proceeds of a fire insurance policy issued prior to the commencement of a bankruptcy proceeding falls within the purview of [11 U.S.C.A. 541(a)(1)]"); In re Cahokia Downs, Inc., 5 B.R. 529, 531 (Bankr.S.D.Ill. 1980) ("there is no question but that a policy of insurance ... is a valid and binding contract between the insurance company and the insured and would constitute an asset of the bankruptcy estate")). Furthermore, "[t]he fact that the insurer disputes or asserts defenses to its liability under the policy does not divest the bankruptcy court of jurisdiction over the policy as property of the debtor's estate." The Interplay of Insurance Companies, 659 PLI/COMM at 278 (citing Holland America, 777 F.2d at 996 ("whether subject to defeasance, defenses, or liens, the fire insurance policy and any right to payment from it [is] property of the debtor's bankrupt estate")).
While American States argues that under American Bankers Ins. Co. v. Maness, 101 F.3d 358 (4th Cir.1996), the insurance policy was not a part of the bankruptcy estate, it is clear that Symes' insurance policy became part of the bankruptcy estate by operation of law when Symes petitioned for bankruptcy.[2] Consequently, the 1998 renewed policy was also a part of the estate, including its increase in policy limits. See 11 U.S.C.A. § 1306; see also Hoffpauir, 258 B.R. at 454 (proceeds of casualty insurance policy property of the estate).
In addition, as Trustee Ellis points out in her reply brief, bankruptcy affects corporations and individuals differently. Because a business under Chapter 7 proceedings liquidates and ceases to exist, there is no other entity to own property the bankrupt business acquires post-petition, so the property becomes a part of the bankruptcy estate. Thus, a business cannot discharge its debt, which 11 U.S.C.A. § 727 specifically prohibits. On the other hand, an individual under Chapter 7 may discharge its debt because an individual continues to exist; thus, post-petition property becomes their own personal property. Thus, the policy was properly in the bankrupt corporation's estate.
C. Terms of the Contract
An insurance policy is a contract between an insurer and its insured. Ohio Cas. Ins. Co. v. Nelson, 49 Wash.2d 748, 306 P.2d 201 (1957); see also Wellbrock v. Assurance Co. of Am., 90 Wash.App. 234, 240-41, 951 P.2d 367 (1998) ("insurance policy is a contract whereby the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event").
Because this is essentially an action for breach of contract by the trustee, the rights and obligation of the parties are controlled by the terms of the contract. See Matthews v. Penn-Am. Ins. Co., 106 Wash. App. 745, 764-65, 25 P.3d 451 (2001), review denied, 145 Wash.2d 1019, 41 P.3d 485 (2002) (this court "examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage"); see also Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 695, 15 P.3d 115 (2000). The pertinent terms of this contract regarding an insured's intentional acts are as follows:
*616 CAUSES OF LOSSSPECIAL FORM B. EXCLUSIONS
1. We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event: ...
h. Dishonest or criminal act by you, any of your partners, employees (including leased employed), directors, Trustees, authorized representatives or anyone to whom you entrust the property for any purpose[.] ...
Clerk's Papers (CP) at 569, 556.
Thus, the policy's language precludes recovery when any insured causes a loss by a dishonest or criminal act. Trustee Ellis claims the benefits of the policy contract but ignores the limitations, exclusions, and conditions applicable under the contract. Our duty is to enforce the parties' intentions in a contract. Aetna Ins. Co. v. Kent, 85 Wash.2d 942, 946, 540 P.2d 1383 (1975).
By regarding this as a contract action, both parties can rely on the policy's terms and conditions when presenting claims and defenses to the contract. Thus, the trial court did not err: the intentional act exclusion can be maintained against the trustee's action; the policy is part of the bankruptcy estate; and the trustee is bound by the acts and omissions of the debtor-in-possession.
D. Kremen
Trustee Ellis invites us to decide this case based on federal bankruptcy law, essentially making this case one of "capacity" as opposed to our approach regarding "contract." In Kremen v. Harford Mut. Ins. Co. (In J.T.R. Corp.),) 958 F.2d 602 (4th Cir.1992), the Fourth Circuit determined that because a debtor-in-possession acts in the creditors' interest, and not his own, the trustee was not barred from recovering insurance proceeds after the debtor-in-possession's manager set fire to its bar and grill. The court held that the trustee stands in the debtor's shoes at the time the bankruptcy petition is filed. Kremen, 958 F.2d at 604-05. Thus, if the fire set by the debtor-in-possession takes place after the bankruptcy petition is filed, the debtor-in-possession is a third party to the transaction, and the trustee can collect proceeds under the policy. Kremen, 958 F.2d at 604-05.
We find no case citing Kremen or applying similar reasoning, and the Ninth Circuit has not considered the matter. The Kremen analysis is brief and does not address insurable interests, public policy issues, or issues involving the contractual nature of a trustee's claim; and, it is unclear whether the Kremen court was analyzing the issue based on policy language involving an intentional act exclusion or simple common law arson. In short, because Kremen lacks in-depth analysis, we find it unpersuasive.
Further, public policy supports our position. A holding consistent with Kremen could encourage acts of arson and encourage fraud against the insurer. Certainly the unsecured creditors would benefit when the insolvent owner burns his business with the intent to destroy records that would implicate him criminally or just relieve him of a debtor situation by having sufficient insurance to cover all of the debt when the business is destroyed. The unscrupous debtor would then have fewer persons examining his position criminally if the unsecured creditors were satisfied by insurance payments. (It is likely that secured creditors would have insurance on their security or be provided for as loss payees.) And the insurer would have little incentive to pursue the debtor if it was required to sustain the loss and pursue the insolvent debtor.
II. American States' Appeal
American States raises in its appeal the issue of whether Trustee Ellis' bad faith claim against it should have been denied under the summary judgment standard set forth in Ellwein. As we read our Supreme Court's ruling in Ellwein, it imposes a different summary judgment standard on a plaintiff bringing a bad faith cause of action. Under Ellwein, American States was entitled to summary judgment as a matter of law if there was a dispute on any "coverage-determining facts."
*617 A. Bad faith elements
Under RCW 48.01.030,[3] an insurer must act in good faith when dealing with its insureds. Pruitt v. Alaska Pac. Assurance Co., 28 Wash.App. 802, 804, 626 P.2d 528 (1981). The insurer's fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud. Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 916-917, 792 P.2d 520 (1990). "Thus, an insurer's denial of coverage, without reasonable justification, constitutes bad faith." Kallevig, 114 Wash.2d at 917, 792 P.2d 520. To establish bad faith, an insured must show that the denial of coverage was unreasonable, frivolous, or unfounded. Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998). Courts will not find bad faith where an insurer makes a reasonable interpretation of the insurance policy when denying coverage. Kirk, 134 Wash.2d at 560, 951 P.2d 1124. An insurer does not have a reasonable basis for denying coverage when it denies coverage based upon suspicion and conjecture. Kallevig, 114 Wash.2d at 917, 792 P.2d 520. Before denying coverage, an insurer must make a good faith investigation of the facts. Kallevig, 114 Wash.2d at 917, 792 P.2d 520. It may not deny coverage based on a supposed defense, which a reasonable investigation would have proved to be without merit. Kallevig, 114 Wash.2d at 917, 792 P.2d 520.
B. Bad faith summary judgment standard
We review a grant of summary judgment de novo and engage in the same inquiry as the trial court. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 63, 64, 1 P.3d 1167 (2000); Reynolds v. Hicks, 134 Wash.2d 491, 495, 951 P.2d 761 (1998) Under the traditional summary judgment standard, this court must determine whether, after reviewing all relevant pleadings and affidavits in favor of the nonmoving party, any genuine issue of material fact exists that prevents the moving party from being entitled to judgment as a matter of law. CR 56(c). We consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Reynolds, 134 Wash.2d at 495, 951 P.2d 761.
Here the parties disagree as to the application of the summary judgment standard to bad faith claims. American States argues that under Ellwein,[4] a recent unanimous Supreme Court decision, it is entitled to dismissal of the bad faith claim on summary judgment, unless the insured can show as a matter of law that there was no reasonable basis for the insurer's actions. The court clearly stated in Ellwein, "Insureds must prove bad faith as a matter of law." Ellwein, 142 Wash.2d at 775-76, 15 P.3d 640. Under Ellwein, the court need only look at whether there is a dispute regarding a "coverage-determining fact." Thus, if there is any issue regarding a "coverage-determining fact," instead of preventing a summary judgment under the traditional standard, the bad faith claim fails and the insurer is entitled to summary judgment. In other words, all of the traditional rules regarding summary judgment are applicable in determining whether there are no genuine issues of material fact. But, if the court finds that there is an issue regarding a "coverage-determining" fact, then, instead of preventing a summary judgment, a summary judgment is mandated in behalf of the insurance company.
The Ellwein standard for bad faith claims on summary judgment is set forth plainly:
Applying the bad faith standard in the summary judgment context, an insurer is ordinarily entitled to summary judgment dismissal of a bad faith claim unless the insured shows there was no reasonable basis for the insurer's actions.....

*618 An insurer is entitled to dispute claims so long as it has a reasonable basis. If reasonable minds could not differ on the coverage-determining facts, a verdict should be directed or summary judgment rendered on coverage. If that cannot be done, it ordinarily must follow that the insurer had reasonable grounds to dispute the facts, precluding any possibility of bad faith.
Ellwein, 142 Wash.2d at 776-77, 15 P.3d 640 (emphasis omitted).
Contrary to Trustee Ellis' assertion, it does not seem that the Supreme Court in Ellwein was limiting its summary judgment standard to the facts of its case. There is no limiting language that would make it applicable only to uninsured motorist claims or facts underlying the claiminstead, the Supreme Court has used the broadest of terms, i.e. a dispute on "coverage-determining facts." Thus, we do not understand there to be any limitation as to the type of policy or as to a set of facts so long as the facts are "coverage-determining"e.g. facts supporting the claim, noncooperation, or any other contractual term which would be "coverage-determining."
C. Application of Ellwein
It is clear that Trustee Ellis disputed whether arson was a reasonable basis for denying coverage when she disputed whether Lepre was the arsonist. But an insurer makes a prima facie case of arson when it establishes that the fire was of incendiary origin and the insured had motive and opportunity. See Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921-22 (11th Cir.Fla.1998) (under Florida law, in order for an insurer to establish a prima facie case of arson for purposes of denying coverage under an insurance policy, the insurer must put forth either direct or circumstantial evidence of motive, opportunity, and an incendiary cause of fire which would allow reasonable people to conclude that the insured was guilty of the burning).
"Arson is a crime most often proven by circumstantial evidence." State v. Young, 87 Wash.2d 129, 137, 550 P.2d 1 (1976). It is a crime of particularly secret preparation and commission, and the State can seldom produce witnesses to the actual setting of such a fire. Young, 87 Wash.2d at 137, 550 P.2d 1. Nevertheless, a "well-connected train of circumstances may be as satisfactory as an array of direct evidence" in proving the crime of arson. Young, 87 Wash.2d at 137, 550 P.2d 1; State v. Plewak, 46 Wash.App. 757, 765, 732 P.2d 999 (1987).
It is undisputed that federal investigations concluded that the fire at Symes was intentionally set and that there were no signs of forced entry into the restaurant. However, American States argued that Lepre set the fire and had a motive and opportunity to do so. Facts supporting American States' position are the following: Symes was in financial trouble; Lepre increased Symes' insurance policy limits; Lepre failed to file tax returns; Lepre allowed the alarm systems to be deactivated; Lepre had a questionable alibi as to his whereabouts on the night and early morning of the fire; Lepre inflated insurance claims; and the fire occurred the night before the day when Symes was to lose possession of the premises to a trustee.
Trustee Ellis attempted to rebut American States' contentions arguing that American States' allegations of motive and opportunity were unreasonable because Lepre had a credible alibi placing him at home and not at the restaurant and American States only reported that Lepre may have participated in the fire. Trustee Ellis also argued that the owners of a neighboring bar, the Cigar Bar, and the landlord also had access to Symes and had the opportunity to set the fire. The Cigar Bar was having financial problems and its owners, who had access to Symes, were the last to leave.
It is evident that the parties dispute "coverage-determining facts." Under Ellwein, the burden is on the insured to show bad faith as a matter of law. Under a traditional summary judgment standard, if there is a genuine issue of material fact, the jury (or fact finder) would decide the issue. But it is not enough, under Ellwein, that there be a genuine issue of material fact. A dispute over "coverage-determining facts" would entitle *619 the insured to summary judgment as a matter of law on the issue of bad faith.
Here, Trustee Ellis did not provide any evidence showing that Lepre lacked a motive to commit arson. And the fact that he had an alibi as to his personal whereabouts did not remove his opportunity to arrange for an arson. Under a traditional standard, a genuine issue of material fact would exist as to who was responsible for the arson and whether there was bad faith on the part of American States. But under Ellwein the result is different. The Trustee Ellis has not met her burden of showing that as a matter of law American States had "no reasonable basis" to deny its coverage claim. Thus, the trial court erred in denying American States' summary judgment motion to dismiss Trustee Ellis' bad faith claim.
The consequence of Ellwein's plain language is that, henceforth, the issue of bad faith will not be a jury question. If there are no genuine issues of material fact, a court should make a legal determination on summary judgment and if there is a question regarding "coverage-determining facts," then the insurer is entitled to summary judgment and a finding that it did not commit bad faith. Thus, the fact finder of a bad faith claim will be the trial court and the jury will only determine damages, if there is a finding of bad faith. Whether or not this was the court's intent when it decided Ellwein, it is the consequence. Because we hold that the trial court should have granted summary judgment in favor of American States, we do not address its alternative arguments.[5]
Affirmed in part, reversed in part.
I concur: ARMSTRONG, J.
SEINFELD, J. (concurring).
I agree with the majority's holding that state law controls this dispute and that the trial court erred in denying summary judgment dismissing Ellis's bad faith claim against American States. I write separately to clarify my understanding of the holding in Ellwein.
The majority states that Ellwein "imposes a different summary judgment standard on a plaintiff bringing a bad faith cause of action." Majority opinion at 616. I do not agree that the Ellwein court is creating a new standard. Rather, it merely is explaining that in a bad faith claim, the question is whether the insurer acted reasonably in denying the claim. See Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998). The Ellwein court concludes as a matter of law that an insurer does act reasonably in denying a claim if there is a legitimate dispute as to coverage-determining facts.
In analyzing a bad faith cause of action, it is important to remember that the material issue is NOT whether the insured violated the policy. Thus, in this bad faith case, disputed evidence as to whether Lepre committed arson does not create an issue of material fact that prevents a summary judgement. If American States had a reasonable basis to believe that Lepre committed the arson, the law allows it to withhold payments and bring a declaratory judgment action. The declaratory judgment action provides the forum for reviewing the insured's conduct.
Because the focus is on the basis for the insurer's conduct, evidence indicating that Lepre may have been responsible for the fire negates a finding of bad faith. But this does not mean, as the majority suggests, that the issue of bad faith can never be a jury question. Ellwein does not mandate summary judgment if there is a dispute as to the adequacy of the insurer's investigation, which, in the context of a bad faith claim, is a material issue of fact.
Because Ellis has not presented evidence disputing the quality of American States' investigation or provided other evidence that it acted in bad faith, there is no disputed issue of material fact. Thus, it was error to deny *620 American State's motion for summary judgment dismissal of the bad faith claim.
NOTES
[1] In May 1999, the Washington Department of Revenue and the Washington Department of Employment Security, along with their federal counterparts, petitioned the bankruptcy court to convert Symes' bankruptcy proceeding from Chapter 11 to Chapter 7 or to dismiss the case. They alleged that Symes failed to file post-petition tax returns and failed to pay post-petition taxes.
[2] The court in Maness determined that because a fire insurance policy arises from a personal contract between the insurer and insured, the trustee needed to demonstrate that the funds from the insurance policy were proceeds from the underlying property for the insurance and its proceeds to be a part of the bankruptcy estate. Maness, 101 F.3d at 362-364.
[3] RCW 48.01.030 provides, in relevant part, that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."
[4] We note that the trial court did not have the benefit of the Ellwein decision. It based its decision on the traditional summary judgment standard. Thus, because there were material issues of fact, i.e. whether Lepre set the fire, a denial of summary judgment might have been justified.
[5] American States alleged two additional grounds for dismissal of Trustee Ellis' bad faith claim, i.e. misrepresentation and failure to cooperate. Because we have held that American States is entitled to summary judgment as to bad faith, we will not discuss the additional grounds. One valid claim for denial is sufficient, even if we held that there were no grounds under Ellwein for either or both of the two additional grounds.