78 P.3d 1266 (2003)
150 Wash.2d 462
AMERICAN STATES INSURANCE COMPANY, Respondent,
v.
SYMES OF SILVERDALE, INC. dba Symes Cigar Bar; Evergreen Restaurant Development, Inc., dba Symes Family Restaurant; of Port Orchard, Inc.; McKenzies of Puyallup Inc.; Thomas R. Lepre aka Lennie Lepre, Defendants,
Kathryn Ellis (in the capacity as Bankruptcy Trustee), Petitioner.
No. 72817-8.
Supreme Court of Washington, En Banc.
Argued May 22, 2003.
Decided November 6, 2003.
*1267 Kennard Goodman, Seattle, for petitioner.
Clarke Bovingdon Cole Mills & Lether, Thomas Lether, Scott Collins, Seattle, for respondent.
Summit Law Group, Thomas James, Seattle, Wiley Rein & Fielding, Laura Foggan, Washington, DC, amicus curiae on behalf of Complex Ins. Claims Litigation.
Bryan Harnetiaux, Debra Stephens, Spokane, for amicus curiae on behalf of Wash. State Trial Lawyers Assoc.
SANDERS, J.
Petitioner Kathryn A. Ellis is bankruptcy trustee for debtor restaurant Symes of Silverdale, Inc. (Symes) whose president allegedly set fire to the premises. Trustee Ellis asks this court to reverse a Court of Appeals decision holding: (1) the exclusion of property insurance coverage for dishonest or criminal acts by the policyholder may be maintained against the policyholder's bankruptcy trustee's seeking benefits from insurer for arson loss and (2) a bankruptcy trustee's claim of bad faith against its insurer for denial of coverage must be dismissed on summary judgment if the insurer had at least one reasonable ground for its action. This is the companion case to Smith v. Safeco Insurance Co., No. 732990, 150 Wash.2d 478, 78 P.3d 1274, 2003 WL 22508858 (Wash. Nov. 6, 2003). Both cases require the court to decide whether the insurer's burden of proof on the summary judgment standard introduced by Ellwein v. Hartford Accident & Indemnity Co., 142 Wash.2d 766, 15 P.3d 640 (2001) is appropriate or applicable. We conclude it is not and reverse and remand to the trial court for proceedings consistent with this opinion.

FACTS
Symes, a family restaurant and sports bar located in Silverdale, Washington, obtained an insurance policy from American States Insurance Company effective March 10, 1997. A month later Symes filed a chapter 11 bankruptcy petition for reorganization. The following spring Symes renewed its insurance contract with American States Insurance effective until March 10, 1999 and increased the limits of its liability. On June 3, 1998, a fire severely damaged Symes. The Bureau of Alcohol, Tobacco and Firearms determined the fire was caused by arson and found no signs of forced entry. The following day with knowledge of the fire, the bankruptcy court granted a creditor's motion to convert the matter from a chapter 11 reorganization to a chapter 7 liquidation. Symes's president, Thomas R. Lepre, filed a claim on behalf of Symes for losses with American States. On June 9, 1998, the bankruptcy court appointed Ellis as Symes's trustee in *1268 bankruptcy. As trustee for the bankruptcy estate, Ellis took responsibility for the insurance claim with American States. The insurance policy proceeds are Symes's only significant asset.
To determine coverage under the policy American States conducted an independent investigation. In March 1999 American States denied the trustee's claim citing fraudulent proof of loss, failure to cooperate and its conclusion the fire was intentionally set by or at the behest of Symes. American States filed a declaratory judgment action to establish it properly denied the claim, where it alleged Symes's president, Thomas R. Lepre, set fire to the restaurant. The trustee responded with breach of contract, Consumer Protection Act (chapter 19.86 RCW), and insurance bad faith counterclaims against American States.
Both parties moved for partial summary judgment. The trustee moved to dismiss American States's claim that it properly denied coverage based on arson, arguing that even if Lepre set the fire, his actions as a debtor-in-possession could not be attributed to the bankruptcy estate because arson is outside the scope of the debtor-in-possession's authority. American States Insurance moved to dismiss the trustee's bad faith claim, arguing that Ellwein, 142 Wash.2d 766, 15 P.3d 640, requires dismissal of insurance bad faith claims if the insurer has at least one reasonable ground for its actions. The trial court denied both motions and the parties appealed.
The Court of Appeals affirmed in part and reversed in part, holding "the intentional act exclusion can be maintained against" the trustee for acts committed by the debtor and the insurer is "entitled to summary judgment dismissal of a bad faith claim unless the insured shows there was no reasonable basis for the insurer's actions." Am. States Ins. Co. v. Symes of Silverdale, Inc., 111 Wash.App. 477, 488, 491, 45 P.3d 610 (2002). The trustee petitioned this court for discretionary review, which we granted. 148 Wash.2d 1014, 64 P.3d 649 (2003).

STANDARD OF REVIEW
"The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court." Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002).

ANALYSIS
I. The Right of a Bankruptcy Trustee to Recover Insurance Proceeds for Damage to Property Allegedly Caused by Debtor
As an initial matter the parties dispute whether state law or federal bankruptcy law applies. The Court of Appeals held "state law, not bankruptcy law, determines contractual terms between the parties, even if one is in bankruptcy...." 111 Wash.App. at 480, 45 P.3d 610.
"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). However, a state has no power to make or enforce any law that conflicts with federal bankruptcy laws. Int'l Shoe Co. v. Pinkus, 278 U.S. 261, 263-64, 49 S.Ct. 108, 73 L.Ed. 318 (1929). State court decisions that define property rights are not binding on federal bankruptcy courts when they are contrary to bankruptcy law. In re Lahman Mfg. Co., 33 B.R. 681, 687 (Bankr.D.S.D.1983). Thus, if there is a conflict between state law and federal law, federal law prevails.
A trustee, as representative of the bankruptcy estate, acquires all the rights of the debtor in an insurance policy issued to the debtor, subject to all defenses and obligations that may have existed at the time the bankruptcy estate was created. In re Feiereisen, 56 B.R. 167, 169 (Bankr.D.Ore.1985). But "the Trustee and the Debtor are neither the same entity nor alter egos of each other." In re Buckeye Countrymark, Inc., 251 B.R. 835, 840 (Bankr.S.D.Ohio 2000). If the debtor has no authority to act *1269 on behalf of the bankruptcy estate, a debtor's intentional wrongdoing is not attributable to the trustee. Feiereisen, 56 B.R. at 169-70. Accordingly, a bankruptcy trustee is not barred from recovering under debtor's insurance policy if the debtor's principal intentionally sets fire to the debtor's premises after the debtor filed a chapter 11 petition for bankruptcy. In re J.T.R. Corp., 958 F.2d 602, 605 (4th Cir.1992).[1]
The Court of Appeals relied on In re Light, 23 B.R. 482 (Bankr.E.D.Mich.1982) for the proposition that a bankruptcy trustee's interest in a debtor's insurance policy is equal to that of the debtor's. But that case is clearly distinguishable. There the debtor allegedly intentionally set fire to his property and filed a claim against his insurer several months before he was forced into involuntary bankruptcy and before a trustee had been appointed to oversee the estate. Id. at 483. The sole issue before the court was whether the defense of arson asserted by the insurer was also valid against the trustee. Id. The court held because the debtor was barred from recovery at the time the petition was filed, the trustee was likewise barred. Id. at 484.
Here Symes's president allegedly set fire to the restaurant after Symes filed a bankruptcy petition but before a trustee was appointed. This case is on all fours with J.T.R. Corp. where a principal of the debtor restaurant corporation intentionally set fire to the restaurant several months after filing a chapter 11 bankruptcy petition. 958 F.2d at 603. The court appointed a bankruptcy trustee a few days after the fire. Id. The Fourth Circuit held the bankruptcy estate was not barred from recovering under an insurance policy even if the principal would have been barred from recovery under the policy. Id. at 605. It reasoned the arson was not attributable to the estate because the principal had no authority from the estate to destroy the restaurant. Id.
But the Court of Appeals declined to apply J.T.R., reasoning:
A holding consistent with [J.T.R.] could encourage acts of arson and encourage fraud against the insurer. Certainly the unsecured creditors would benefit when the insolvent owner burns his business with the intent to destroy records that would implicate him criminally or just relieve him of a debtor situation by having sufficient insurance to cover all of the debt when the business is destroyed. The unscrupulous debtor would then have fewer persons examining his position criminally if the unsecured creditors were satisfied by insurance payments. (It is likely that secured creditors would have insurance on their security or be provided for as loss payees.) And the insurer would have little incentive to pursue the debtor if it were required to sustain the loss and pursue the insolvent debtor.
111 Wash.App. at 488-89, 45 P.3d 610. Yet state courts have no authority to depart from federal bankruptcy law based on a disagreement as to appropriate public policy. Pinkns, 278 U.S. at 263-64, 49 S.Ct. 108. Moreover, the Court of Appeals public policy argument is unpersuasive. It is unlikely a debtor would commit arson to satisfy his or her creditors when the debtor already enjoys the protection of the bankruptcy court. And even if the debtor were motivated to commit arson that is strictly a criminal matter and has no bearing on the insurer's contractual obligation to indemnify the estate for losses caused by arson. Based on J.T.R. we hold the bankruptcy trustee is not barred from recovering under the policy.
II. The Insurer's Burden on Summary Judgment in an Action for Bad Faith
An insurer has a duty of good faith to its policyholder, and violation of that duty may give rise to a tort action for bad faith. Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wash.2d 751, 765, 58 P.3d 276 (2002). To prove bad faith the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. Overton v. Consol. Ins. Co., 145 Wash.2d 417, 433, 38 P.3d 322 (2002).
*1270 Whether an insurer acted in bad faith is a question of fact. Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wash.2d 784, 796, 16 P.3d 574 (2001). Accordingly, an insurer is entitled to a directed verdict or a dismissal on summary judgment of the policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances and the insurer is entitled to prevail as a matter of law. Indus. Indem. of the NW, Inc. v. Kallevig, 114 Wash.2d 907, 920, 792 P.2d 520 (1990).
However, Ellwein, which issued one week before Van Noy, appears to authorize dismissing a bad faith claim on summary judgment when there is a dispute regarding "`coverage-determining facts.'" Ellwein, 142 Wash.2d at 777, 15 P.3d 640 (quoting William T. Barker & Paul E.B. Glad, Use of Summary Judgment in Defense of Bad Faith Actions Involving First-Party Insurance, 30 TORT & INS. L.J. 49, 56 (1994)). Relying on Ellwein, the Court of Appeals dismissed the trustee's bad faith claim against American States because Ms. Ellis could not prove as a matter of law that she was entitled to coverage. American States Ins. Co., 111 Wash.App. at 490-91, 45 P.3d 610.
In our companion case, Smith v. Safeco Insurance Co., No. 73299-0, 150 Wash.2d 478, 78 P.3d 1274, 2003 WL 22508858 (Wash. Nov. 6, 2003), we overrule Ellwein to the extent it purports to introduce a new summary judgment standard for insurance bad faith claims. Id., No. 73299-0, slip op. at 7, 150 Wash.2d at 485-86, 78 P.3d 1269. Thus, notwithstanding language in Ellwein to the contrary, an insurer must "`give[ ] equal consideration in all matters to the [policyholder's] interests as well as its own.'" Van Noy, 142 Wash.2d at 793, 16 P.3d 574 (quoting Van Noy v. State Farm Mut. Auto. Ins. Co., 98 Wash.App. 487, 492, 983 P.2d 1129 (1999)). Because the Court of Appeals dismissal of the bad faith claim was predicated on a misunderstanding of federal bankruptcy law and Ellwein, we reverse and remand to the trial court for proceedings consistent with this opinion.
WE CONCUR: IRELAND, BRIDGE, CHAMBERS and FAIRHURST, JJ.
MADSEN, J., (dissenting).
This case involves a breach of contract claim arising out of an insurer's denial of coverage. The insurer denied coverage on a claim brought by the president of a corporation who intentionally destroyed the insured corporation's assets. Under federal case law, the contractual terms of an insurance policy remain enforceable even in bankruptcy and an estate's interest in property is determined by reference to state law. In this case, the contractual terms of the insurance policy exclude coverage when a person, authorized to act for the insured, causes loss through a criminal act. Furthermore, state case law precludes recovery where a dominating shareholder intentionally destroys assets of the insured corporation. Thus, there can be no recovery against the insurance policy in this case under either federal or state law. However, rather than adhering to overwhelming authority, the majority follows a poorly reasoned decision of the Fourth Circuit of the Court of Appeals and holds that the insurer is bound to indemnify such a loss based solely on the fact that the debtor corporation had filed bankruptcy. I must respectfully dissent.

ANALYSIS
Although federal law determines what assets of the debtor become assets of the estate in bankruptcy, state law determines the extent of the estate's interest in those assets. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). An interest in property should not be "analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Id. To do so would create uncertainty, encourage forum shopping and might result in a party "receiving `a windfall merely by reason of the happenstance of bankruptcy.'" Id. (quoting Lewis v. Mfrs. Nat'l Bank of Detroit, 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)).
*1271 A debtor's interest in an insurance policy existing at the time of the bankruptcy filing becomes property of the estate in bankruptcy. See Am. Bankers Ins. Co. of Fla. v. Maness, 101 F.3d 358, 362 (4th Cir.1996) (citing A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001 (4th Cir.1986)); In re of Edgeworth, 993 F.2d 51, 55 (5th Cir.1993); First Fid. Bank v. McAteer, 985 F.2d 114, 116 (3d Cir.1993); MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2d Cir.1988); Tringali v. Hathaway Mach. Co., 796 F.2d 553, 560 (1st Cir.1986). But, "`the estate's legal and equitable interests in property rise no higher than those of the debtor.'" McAteer, 985 F.2d at 117 (quoting In re Gagnon, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983)). Thus, the extent of an estate's interest in an insurance policy is determined by reference to state law and does not vary from the debtor's interest in that policy outside of bankruptcy.
In accordance with established Washington law, "[i]nsurance is a contractual relationship between the insurer and the insured." Ohio Cas. Ins. Co. v. Nelson, 49 Wash.2d 748, 751, 306 P.2d 201 (1957). Interpretation of an insurance policy is a question of law and "[w]here the language in a contract for insurance is clear and unambiguous, the court should enforce the policy as written." Matthews v. Penn-America Ins. Co., 106 Wash. App. 745, 747-48, 25 P.3d 451 (2001). Furthermore, bankruptcy courts have said that the terms of an insurance policy apply despite the filing of a bankruptcy petition. See, e.g., In re Jones, 179 B.R. 450, 455 (Bankr.E.D.Pa.1995); In re of Light, 23 B.R. 482, 483 (Bankr.E.D.Mich.1982) ("[t]he right to recover on an insurance policy is determined by the rights provided by the contract of insurance."). "[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition." Jones, 179 B.R. at 455 (citing First Fid. Bank v. McAteer, 985 F.2d 114, 117 (3d Cir.1993)). See also In re Intercontinental Sec. Corp., 62 B.R. 16 (N.D.Ill.1986) (insurer not bound to indemnify loss incurred by corporation in bankruptcy where insurance company had contractual right to question sole shareholder who failed to appear for oral examinations).
The insurance policy involved in this case excludes losses for "`[d]ishonest or criminal act[s] by [the insured], any of [the insured's] partners, employees (including leased employed) [sic], directors, Trustees, authorized representatives or anyone to whom [the insured] entrust[s] the property for any purpose.' "Am. States Ins. Co. v. Symes of Silverdale, Inc., 111 Wash.App. 477, 487, 45 P.3d 610 (2002) (quoting Clerk's Papers). Furthermore, Washington courts have held that an insurer is not bound to indemnify a loss experienced by a corporation that is caused by the intentional act of destruction by a majority shareholder who exercises control over its operations. See, e.g., Great Am. Ins. Co. v. K & W Log, Inc., 22 Wash.App. 468, 591 P.2d 457 (1979) (logging company barred from recovering under insurance policy where circumstantial evidence showed that an individual who was the majority shareholder, president and manager intentionally destroyed equipment of the company with explosives).
Other jurisdictions, including federal courts, follow this general rule where a stockholder, officer or employee exercises a great degree of control over the corporation and stands to benefit directly or indirectly if recovery is allowed. See Peter G. Guthrie, Annotation, Fire Insurance on Corporate Property as Affected by its Intentional Destruction by a Corporate Officer, Employee, or Stockholder, 37 A.L.R.3d 1385 §§ 2[a], 3 (1971); Kimball Ice Co. v. Hartford Fire Ins. Co., 18 F.2d 563 (4th Cir.1927) (insurer not bound to indemnify loss caused by act of arson of general manager who held one quarter of capital stock, was also a creditor of the insolvent corporation, and exercised exclusive management and control of it); Meily Co. v. London & L Fire Ins. Co., 148 F. 683 (3d Cir.1906) (arson by sole shareholder would preclude recovery); Miller & Dobrin Furniture Co. v. Camden Fire Ins. Co., 55 N.J.Super. 205, 150 A.2d 276 (1959) (no recovery where arsonist was 50 percent owner of corporation and exercised control over its affairs).
The court in Northern Assurance Co. v. Rachlin Clothes Shop explains the rationale *1272 for disregarding the corporate fiction and holding that a company is bound by an act of arson of a dominating shareholder, employee or officer with respect to an insurance policy. N. Assur. Co. v. Rachlin Clothes Shop, Inc., 32 Del. 406, 125 A. 184 (1924). There the court explained that officers of a corporation who manage and control "the ultimate direction of its affairs ... are to be regarded as the corporation itself" because a corporation is "a purely metaphysical creature, having no mind with which to think, no will with which to determine and no voice with which to speak." Id. at 416, 125 A. 184. "[W]hen an officer of the corporation is allowed to perform the functions of the whole management of the corporation, the directors and stockholders abandoning to him the entire control of its affairs, what he does in the prosecution of the company's business is to be regarded as being the act and will of the directors and as fully expressive of the corporation's purposes as though formally authorized by the directors themselves." Id. at 419, 125 A. 184. "[T]he general rule is now firmly established that corporations cannot make defense to actions in tort claiming that the acts by which the wrongs have been committed are not within the corporate powers conferred upon them." Id. at 420, 125 A. 184 (quoting 1 William W. Cook, Treatise on the Law of Corporations Having a Capital Stock 156 (8th ed.1923)).
The language contained in the insurance policy in this case clearly excludes coverage for an act of arson by the insured or an authorized representative. The respondent is the president of the insured corporation and is at least an authorized representative of the corporation, if not the corporation itself as explained in Rachlin. Thus, his act of arson precludes any recovery under the plain language of the policy.
Furthermore, the respondent is a shareholder who not only exercised control of the corporation, but who will also benefit if the insurer is forced to indemnify this loss. This is so because the named insured under the policy is a company that was owned and operated by him. The repayment of debts owed by the company made possible by the receipt of insurance proceeds will serve to improve its financial condition and, consequently, the respondent's financial condition. At least theoretically, the creditors may be fully repaid from the insurance proceeds. Consequently, the debtor corporation may successfully emerge from bankruptcy leaving the respondent with a clean slate or perhaps even a positive equity interest in the corporation. In the event the corporation does not survive despite the receipt of insurance proceeds, the respondent may still benefit because he can show that creditors of the bankrupt corporation had been at least partially repaid, improving his chances for starting a new business and attracting new creditors or investors. Contrary to the majority's assertion that a would be arsonist has no motivation for committing the criminal act of arson against property when a business is already protected by the auspices of the bankruptcy court, it is not difficult to imagine other scenarios where the friends or family of the arsonist would benefit from indemnification of such a loss as a shareholder or named insured, which may in turn indirectly benefit the arsonist. And, it might often be the case that burning a business down in order to receive insurance proceeds will result in a faster and larger recovery than would be realized through the bankruptcy process. Thus, this court should follow the general rule applied in Washington and elsewhere, and deny recovery under the policy in this case.
Instead, the majority relies upon a poorly reasoned decision by a three-judge panel of the Fourth Circuit of the United States Court of Appeals in order to override the policy's express criminal acts exclusion. In In re J.T.R. Corp., as in this case, the debtor had filed bankruptcy under chapter 11 and remained in control when the business was destroyed by fire. In re J.T.R. Corp., 958 F.2d 602, 603 (4th Cir.1992). The parties did not dispute that the debtor-in-possession intentionally set the fire. Id. A trustee was appointed a few days after the fire, and later filed an insurance claim on behalf of the estate seeking to recover for the loss caused by the fire. Id. Relying on a bankruptcy court decision, In re Feiereisen, 56 B.R. 167 (Bankr.D.Or.1985), the Fourth Circuit held that the bankruptcy trustee could recover *1273 under the policy. J.T.R. Corp., 958 F.2d at 604.
Unfortunately, the J.T.R. court's reliance on Feiereisen was completely misplaced. In that case the debtor committed arson after the bankruptcy filing and the appointment of a trustee. Feiereisen, 56 B.R. at 169. The bankruptcy court held that neither the trustee nor the estate was barred from recovering under the insurance policy because the debtor was not authorized to act on behalf of the estate. Id. Thus, the debtor's acts could not be attributed to the estate and thereby preclude any recovery under the policy. Feiereisen, 56 B.R. at 170. In the case now before this court, as in J.T.R. Corp., a trustee had not been appointed at the time of the arson and the officers of the debtor corporation remained in control.
The Fourth Circuit misread Feiereisen to hold that as soon as a bankruptcy petition is filed, the trustee may not be barred from recovering under an insurance policy for a criminal act of arson committed by a debtor in possession prior to the appointment of a trustee. J.T.R., 958 F.2d at 605. This is simply incorrect. The bankruptcy court's opinion in Feiereisen was based on the fact that a trustee had been appointed and the debtor had no authority to act on behalf of the estate at the time of the arson. That court indicated "[t]he trustee, as representative of the estate, acquired the rights of the debtor in the insurance policy issued ... subject to all defenses and obligations that may have existed at the time the estate was created." Feiereisen, 56 B.R. at 169. This statement emphasizes that the trustee, as opposed to the debtor, was the representative of the estate at the time the arson occurred and the debtor had no authority to act on its behalf. As Feiereisen stated, "[n]o facts have been presented to the court, in this case, indicating that the debtor had any authority to act on behalf of the estate... when the fire occurred." Id. The court further indicated the arson "did not occur until well after the reconversion of this case and the appointment of defendant as trustee" and that "the estate acts by and through its representative, the [trustee]." Id. at 169-70 (emphasis added). Only after emphasizing the fact that the debtor had no authority to act on behalf of the estate did the bankruptcy court conclude that the arson "is not attributable to the trustee or the estate." Id. at 170. Thus, Feiereisen does not stand for the proposition that the defense of arson is unavailable where a debtor who remains in control of a business intentionally destroys the insured assets.
The J.T.R. court unconvincingly asserts that the "meaningful issue" is "the filing of the petition" because, it says, upon the filing of a bankruptcy petition "the debtor ... ceases to act in his own interests and begins to act for the creditors." In re J.T.R. Corp., 958 F.2d at 605. As noted, however, the holding in Feiereisen was based on the fact that the debtor had no authority to act on behalf of the estate. Thus, the relevant question is whether the debtor acted with authority and not, as J.T.R. suggests, in whose interest the debtor acts. This is so because the contractual terms of an insurance policy persist even when the debtor "ceases to act in his own interests and begins to act for the creditors." Here, the respondent remained in control of the debtor corporation until a trustee was appointed following the arson. Thus, under the terms of the policy and in accordance with state law, respondent was at least "the authorized representative" of the bankruptcy estate.
Finally, it is worth noting that the parties here have not disputed that the contract for insurance is valid and binding upon the parties, or that the respondent was acting with authority when the policy was obtained and renewed and when the fire occurred. This case involves a breach of contract claim relating to the insurer's denial of coverage. This court should hold that there was no breach because even in bankruptcy the insurer is not bound to indemnify loss excluded by the contractual terms of the insurance policy. The court should not rewrite the terms of an insurance policy bargained for by the parties which expressly excludes coverage for the criminal acts of the insured or authorized representatives.

Conclusion
The rule adopted by the majority runs counter to the great weight of federal and *1274 state authority. This court should not abandon the well-worn path to follow the Fourth Circuit's lead where it fails to provide any rational basis for the adoption of the rule it promulgates. Rather, this court should hold that where a debtor in possession commits an act of arson against property of the debtor corporation after the filing of a bankruptcy petition but before the appointment of a trustee, a trustee thereafter appointed has no greater rights under an insurance policy than the debtor in possession and thus may not recover under a policy which expressly excludes coverage for such an act.
NOTES
[1] In re J.T.R. Corp., 958 F.2d 602 (4th Cir.1992) was cited as Kremen v. Harford Mutual Insurance Co. in American States Insurance v. Symes of Silverdale, Inc., 111 Wash.App. 477, 488-89, 45 P.3d 610 (2002).