12

[No. 51019-3-I. Division One. July 14, 2003.]

JAMES E. TORINA FINE HOMES, INC., *Respondent*, v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant*.

*James M. Beecher* (of *Hackett, Beecher & Hart*), for appellant.

*Gregory L. Harper* (of *Stanislaw, Ashbaugh, L.L.P.*), for respondent.

BAKER, J. — James E. Torina Fine Homes, Inc., sued its insurer, Mutual of Enumclaw, alleging a Consumer Protection Act[1] (CPA) claim for failure to make a good faith investigation of its insurance claim. The trial court ruled that bad faith was established as a matter of law, and that the insurer had thus committed a CPA violation. The court barred the carrier from asserting any defenses to coverage and awarded damages including prejudgment interest and attorney fees. Because the insurance carrier acted reasonably in investigating the claim, we hold that no bad faith claim was established. We reverse.

I

In February 1999, James and Laura Torina entered into a residential real estate purchase and sale agreement (REPSA) to sell their home, which they recently had built for them by Torina Fine Homes, a corporation owned by Torina. The agreement listed James E. and Laura M. Torina as the sellers. It did not reference the Torinas' construction company, Torina Fine Homes (TFH). Mr. and Ms. Torina signed the document as individuals and initialed the document throughout as individuals. The REPSA contains no indication of James Torina's connection to TFH.[2] The addendum granting a one year warranty for the home referred to the seller as "seller/builder."

Several months later, the buyers Stephen and Kay-Dawn Jenkins (Jenkins) requested that Torina repair water damage to their deck. An inspection revealed that a subcontractor had improperly installed the synthetic stucco siding.

---

[1] Ch. 19.86 RCW.

[2] James Torina served as both president and a director of Torina Fine Homes.

This mistake caused significant water damage to the home's framing. Eventually TFH repaired this damage.

In August 2000, TFH made a claim on its Mutual of Enumclaw commercial general liability policy and brought a claim against the subcontractor who installed the stucco siding.

Following an inspection, Mutual of Enumclaw's adjuster requested that Torina provide him with a copy of the sales contract and asked if TFH had ever owned the home, and if so, when TFH sold the home to the Torinas.

Based on the belief that the home had been owned by TFH, Mutual of Enumclaw declined coverage based on language in the policy excluding claims for property damage to premises sold by TFH. In its November 2000 letter denying coverage, the carrier's attorney explained that TFH should contact him immediately if any of the facts underlying its decision were incorrect.

In early 2001, TFH's attorney contacted the carrier's attorney about the claim. He stated that he was uncertain whether TFH had ever owned the property. Mutual of Enumclaw's attorney responded by acknowledging that if TFH had never owned the property, then the referenced exclusion would not apply, but that the carrier would then assert a lack of privity defense to a claim by Jenkins. He again requested documentation on the ownership of the home.

In late March, TFH's attorney wrote to again request that the carrier cover the loss. But in the letter he failed to explain that the property had never been owned by TFH. Instead, he inferred that the home had been built for the Jenkins. In fact, the house had been built as a spec home for the Torinas.

Eventually, never having provided the requested sale and ownership documentation, TFH sued its insurer, claiming a breach of its contractual duty to indemnify TFH. TFH alleged that the carrier was estopped from contesting coverage, and that it had committed several CPA violations.

Mutual of Enumclaw appeals the trial court's grant of summary judgment in favor of TFH.

## II

When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court.[3] We will affirm an order granting summary judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[4]

TFH alleges that Mutual of Enumclaw conducted its investigation in bad faith by failing to properly and fully investigate TFH's claim. An insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit.[5] The implied covenant of good faith and fair dealing in the policy requires the insurer to perform any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage. If the insurer fails in either regard, it will have breached the covenant and, therefore, the policy.[6]

At issue is whether the carrier's conduct was reasonable, and whether it was required to inquire into the property's ownership to a greater degree than it did. The insurer reasonably relied on TFH's implication that it had owned the property and denied coverage based on those facts. The insurer asked for documentation of ownership and a copy of the REPSA on at least two occasions. It argues that its mistake in ownership was "a good faith mistake invited by

---

[3] *Doolittle v. Small Tribes of W. Wash., Inc.*, 94 Wn. App. 126, 134, 971 P.2d 545 (1999).

[4] CR 56(c); *Doolittle*, 94 Wn. App. at 134.

[5] RCW 48.01.030; *see also Indus. Indem. Co. of the N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520 (1990).

[6] *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 281, 961 P.2d 933 (1998) (citing 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 2.05, at 38 (3d ed. 1995)).

the insured withholding both the deed and the sales contract."

Without the REPSA, Mutual of Enumclaw could not properly evaluate TFH's claim. Eventually, the insurer paid for a title search. And when it finally obtained a copy of the REPSA, it concluded that there was no coverage because the contract clearly showed that the Torinas had either individually warranted the construction or had attempted to obligate their corporation, which was not a party to the REPSA. This evidence does not establish that the insurer conducted its investigation in bad faith.

In its summary judgment order, the trial court concluded that waiver and estoppel barred Mutual of Enumclaw from asserting any of its defenses to coverage. In support of that ruling, TFH cites to *Bosko v. Pitts & Still, Inc.*[7]

In *Bosko*, the insurer asserted one reason for denying coverage but did not put the insured on notice that it reserved all its rights under the policy.[8] After delaying nearly three years, the insurer then claimed that because a different automobile policy also provided coverage for an accident, it was not liable under the provisions of the policy at issue.[9]

 The court concluded that the insurer's delay prejudiced the insured because the insured could no longer submit a claim to the automobile insurance company.[10] The court concluded that the insurer either knew or should have known about the other policy, and that "[a]n insurer should not be able to escape its contractual obligations by pur-

---

[7] 75 Wn.2d 856, 454 P.2d 229 (1969).

[8] *See Bosko*, 75 Wn.2d at 863-64.

[9] The *Bosko* policy contained an "other insurance" provision. *Bosko*, 75 Wn.2d at 862.

[10] *Bosko*, 75 Wn.2d at 864 (traditional equitable estoppel requires prejudice); *see also Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 563-65, 951 P.2d 1124 (1998) (insurance bad faith estoppel, as the name implies, requires bad faith denial by insurer).

posely keeping itself ignorant of essential facts."[11] But in *Bosko*, the insurer's actions unfairly prejudiced the insured. Here, there is no evidence that TFH was unfairly prejudiced by the carrier's initial denial.

In *Hayden v. Mutual of Enumclaw Insurance Co.*,[12] our Supreme Court again reiterated that an insured must establish prejudice or bad faith for estoppel to apply.[13] It is well established that "an insurer that refuses or fails to defend in bad faith is estopped from denying coverage."[14]

But here there was no refusal to defend, only the refusal to indemnify. And our courts have consistently held that the duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy.[15] The initial denial of coverage here, based on a mistake of fact which TFH could easily have corrected, did not result in prejudice that rises to the level of estoppel.

TFH also argues that the trial court correctly applied the doctrine of waiver to bar Mutual of Enumclaw's defenses to coverage. But the doctrine of waiver requires a showing that the insurer has voluntarily and intentionally relinquished a known right or that its conduct warrants an inference of the relinquishment of such right.[16] Our Supreme Court has required that for the insurer's decision to be voluntary, the insurer must have made a conscious decision to relinquish the right.[17] The insurer's conduct

---

[11] *Bosko*, 75 Wn.2d at 864-65.

[12] 141 Wn.2d 55, 1 P.3d 1167 (2000).

[13] *Hayden*, 141 Wn.2d at 63 (for estoppel to apply, "insureds must demonstrate either that they suffered prejudice or that the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter").

[14] *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 759, 58 P.3d 276 (2002).

[15] *Hayden*, 141 Wn.2d at 64. This is distinct from the duty to defend, which exists merely if the complaint contains any factual allegations which could render the insurer liable to the insured under the policy. It appears that the judge confused the two standards.

[16] *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 339, 779 P.2d 249 (1989).

[17] *Saunders*, 113 Wn.2d at 340.

giving rise to a waiver argument cannot be consistent with any interpretation other than intent to waive—any other reasonable explanation precludes applying waiver.[18] The insurer must also know that certain conduct has the effect of relinquishing a right.

TFH argues that once an insurer denies a claim, the insurer is precluded from asserting other policy conditions as a defense to a subsequent suit by the insured, citing *Pappadakis v. Netherlands Fire & Life Insurance Co.*[19] We note that no Washington court has cited *Pappadakis* for that, or any proposition.

In *Pappadakis*, a crack in an oven triggered automatic sprinklers, damaging a bakery's equipment and supplies.[20] The insurer did not immediately respond to the claim, sending an adjuster five days after the accident. In the meantime, the bakery owner had cleaned up the damage.[21] When the adjustor arrived, he denied liability and chose not to speak to the owner.[22]

At trial, the insurer claimed that the insured had violated a policy provision giving it the right to inspect the property after a loss.[23] The court rejected this argument and held that the insurer had waived its right to inspection by denying liability under the policy.[24] As the court explained, the effect of the insurer's actions was to " 'operate as a

---

[18] *See Saunders*, 113 Wn.2d at 340; *see also Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985) (holding that "[a] waiver is the intentional and voluntary relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right").

[19] 137 Wash. 430, 242 P. 641 (1926).

[20] *Pappadakis*, 137 Wash. at 431.

[21] *Pappadakis*, 137 Wash. at 435.

[22] *Pappadakis*, 137 Wash. at 435.

[23] *Pappadakis*, 137 Wash. at 435.

[24] *Pappadakis*, 137 Wash. at 435.

waiver of the provision requiring notice and proofs of loss, or of any defects in notice of proofs.' "[25]

But we cannot read that case as holding that an insurer cannot modify its position based on newly discovered information when the insurer's actions do not prejudice the insured.

The facts in the present case do not establish waiver, nor is TFH prejudiced by Mutual of Enumclaw's reliance on contractual defenses which first became known to the carrier when the requested ownership and sale documentation was finally provided to it.

Because summary judgment was inappropriate, we reverse. We note that on the record before us, we cannot determine whether the damage to the Jenkins' home was covered by TFH's commercial general liability policy, or whether one of the asserted defenses precludes coverage.

█ An insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist.[26] Under RCW 48.01.030, an insurer must act in good faith when dealing with its insureds. The insurer's fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud.[27] And a breach of the insurer's duty may lead to a CPA claim by the insured.

██ To prevail on a CPA claim, one must show (1) an unfair or deceptive act or practice in trade or commerce that impacts the public interest and (2) a resulting injury to the claimant's business or property.[28] The insured may estab-

---

[25] *Pappadakis*, 137 Wash. at 435 (quoting 5 JOSEPH A. JOYCE, A TREATISE ON THE LAW OF INSURANCE § 3373, at 5592 (2d ed. 1918) (footnotes omitted)).

[26] *Coventry*, 136 Wn.2d at 279.

[27] *Kallevig*, 114 Wn.2d. at 916-17.

[28] *Kallevig*, 114 Wn.2d at 920-21; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

lish the first element by showing a violation of any subsection of WAC 284-30-330.[29]

■ When a CPA claim is based upon an insurer's denial of coverage, an insured must show more than an incorrect denial of coverage. The insured must also establish that the insurer acted "without reasonable justification" in denying coverage.[30] The test is not whether the insurer's interpretation is correct, but whether the insurer's conduct was reasonable.[31] Because we have already determined that Mutual of Enumclaw's conduct was reasonable under the circumstances, we reject TFH's CPA claim. Accordingly, there was no CPA violation for bad faith denial of coverage.

We reverse and remand because the insurer's actions were not unreasonable, and estoppel and waiver were inappropriate penalties under the facts before the court. Accordingly, the damage award is likewise reversed.[32]

COLEMAN and ELLINGTON, JJ., concur.

Review denied at 151 Wn.2d 1010 (2004).

---

[29] *See Kallevig*, 114 Wn.2d at 923.

[30] *Kallevig*, 114 Wn.2d at 917.

[31] *Roberts v. Allied Group Ins. Co.*, 79 Wn. App. 323, 326, 901 P.2d 317 (1995) (" 'A denial of coverage based on a reasonable interpretation of the policy is not bad faith, and even if incorrect, does not violate the Consumer Protection Act if the insurer's conduct was reasonable.' ") (quoting *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988) (citations omitted)); *see also Villella v. Pub. Employees Mut. Ins. Co.*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986) (recognizing that incorrectly denying coverage "based on reasonable conduct of the insurer does not constitute an unfair trade practice").

[32] We note, however, that we can find no legal basis for the trial court's denial of an offset to Mutual of Enumclaw for the money TFH received from the subcontractor. This settlement for $40,000 was not applied to the amount that Mutual of Enumclaw owed to TFH. Apparently, the trial court determined that Mutual of Enumclaw was not entitled to an offset because its conduct denying coverage was "unreasonable, unfounded and frivolous as a matter of law."