109 P.3d 1 (2004)
124 Wash.App. 263
Arlene A. WRIGHT, Appellant/Cross-Respondent,
v.
SAFECO INSURANCE COMPANY OF AMERICA, Respondent/Cross-Appellant.
No. 52434-8-I.
Court of Appeals of Washington, Division 1.
September 20, 2004.
Publication Ordered October 22, 2004.
*3 Thomas F. Ahearne, John P. Zahner, Foster Pepper & Shefelman, Seattle, for Appellant.
Rory W. Leid, Ryan J. Hall, Clarke Bovingdon Cole Mills & Lether, Seattle, for Respondent.
SCHINDLER, J.
¶ 1 Arlene Wright appeals the trial court's order dismissing her coverage claims against her insurer, Safeco Insurance Company of America (Safeco). Safeco provided coverage under Wright's policy for losses caused by water overflowing from an interior fountain but denied coverage for water and mold damages to the fountain and laundry areas and exterior walls caused by construction defects. Wright contends Safeco incorrectly concluded that the policy exclusions for construction defects and mold prevent recovery for those losses. Wright also argues coverage is available for the fountain and laundry area losses under an exception for water damage and an additional coverage provision. Safeco appeals the trial court's decision denying its summary judgment motion on Wright's bad faith and Consumer Protection Act (CPA) claims. Safeco contends it did not act in bad faith and Wright cannot establish the requirements for a CPA claim. We affirm the trial court's dismissal of Wright's coverage claims and reverse the trial court's denial of Safeco's motion to dismiss Wright's bad faith and CPA claims.

FACTS
¶ 2 Arlene Wright insured her $8 million lakefront Carillon Point condominium with an all-risk Quality Crest Homeowner's Policy from Safeco. The Carillon Point Condominium complex was constructed in 1990-91. In June 1994, Wright purchased two adjoining ground floor units. When Wright purchased her units, they were empty shells consisting of steel-stud framing, exterior sheathing and siding. Wright hired Jerry Fulks & Co. (Fulks) to build-out and construct the interior of her unit. Construction took place between 1994 and 1996 and included installation of electric and plumbing components, interior walls and fiberglass insulation.
¶ 3 During construction, Fulks discovered water leaks in some exterior walls and around some windows. Fulks contacted Building Envelope Consulting Services to investigate the leaks. According to Building Envelope's December 1994 report, there were numerous leaks in exterior walls and around windows, and mildew on the inside wall surfaces of some of the areas affected by the leaks.
¶ 4 Wright then hired Healthy Buildings Associates, an indoor air quality consultant, in January 1995 to make recommendations about how to address the mildew in Wright's unit. Healthy Buildings identified several sources of moisture in the unit, including leaks in exterior walls and around windows, and water infiltrating through the concrete slab under the unit. Healthy Buildings recommended Wright repair the exterior wall and window leaks, and replace portions of exterior drywall sheathing where mold was present. Healthy Buildings also recommended thoroughly drying the unit.
¶ 5 When Wright moved into the condominium in 1996, she noticed certain exterior walls and windows had water leaks and there was mildew in some areas. Wright notified Fulks and her condominium homeowner's association about the leaks. At her request, Healthy Buildings conducted another inspection of the mildew in her unit. Healthy Buildings' September 1996 report stated that moisture and mold in the walls was still a problem and again recommended repairs and strategies.[1]
¶ 6 Sometime between August 1996 and January 1997, Fulks installed an indoor fountain in Wright's condominium. From the *4 first time the fountain was used in May 1997, it leaked. The leaks from the fountain caused the marble floor tiles surrounding it to become degraded and discolored. From November 1997 through April 1998, Fulks looked into solutions to the fountain leaks and replacing the crumbling and discolored marble tiles.
¶ 7 On May 17, 1999, the fountain overflowed, flooding the living room, part of the dining room, and the master bedroom. Wright said a cat toy plugged one of the fountain drains.[2] The flood damage to rugs and furniture was reported to Safeco the same day. Safeco visited the condominium to investigate the reported damage.
¶ 8 When the rugs and furniture were removed for cleaning, extensive crumbling and deterioration of the marble floor was discovered around the fountain. Wright contacted Safeco to inform them that the carpets would have to be replaced. On June 14, Burt Lockhart, a project manager for Fulks, told Safeco the damage from the flood was extensive and its scope would not be known for some time. On June 16, Safeco prepared an initial estimate of $49,424.95 for the fountain flood damage.[3] On June 29, Lockhart informed Safeco that it would be approximately three months before the replacement floor tiles could be delivered. In August 1999, Safeco paid Wright approximately $90,000 for the flood damage.
¶ 9 In October 1999, Wright's personal advisor, Bill Clancy, told Safeco that repairs had stopped to allow further testing to determine whether the water and mold damage was caused by the fountain flood or by water leaks from the exterior walls and windows and the fountain plumbing connection.
¶ 10 In October 2000, Safeco made additional payments of over $175,000 to Wright for damage to her home, personal property and loss of use.
¶ 11 In January 2001, a Safeco representative met with the president of Wright's condominium homeowner's association, the association's insurer, the insurer's agent, Clancy and Lockhart. The homeowner's association had submitted a claim to its insurer for the water damage to the exterior walls of Wright's unit. Safeco took the position that it was responsible only for the repairs associated with the fountain flood damage.
¶ 12 In early 2001, Safeco made an additional payment of approximately $130,000 for flood damage to Wright's condominium unit and personal property.
¶ 13 In April 2001, Wright hired the engineering firm Wiss, Janney, Elstner Associates, Inc. (WJE) to investigate the water and mold problems at her condominium. Over the next several months, WJE conducted a comprehensive investigation into the causes of the water and mold damage. WJE, in its November 2001 final report, concluded the water and mold damages to Wright's condominium unit were caused by construction defects.
¶ 14 Based on the WJE report, in December 2001 Safeco asked Wright to provide a formal proof of loss in support of her damage claims. On March 26, 2002, Wright submitted three claims for (1) the fountain leaks and flooding; (2) water and mold damage in the laundry room walls; and (3) water and mold damage to the exterior walls.
¶ 15 Safeco agreed Wright's policy provided coverage for the losses from the fountain flood, including drywall, marble tiles, flooring and personal property damages. But based on WJE's report, Safeco denied coverage for water and mold damages to the fountain and laundry areas caused by defective construction. Wright's policy excludes coverage for loss from defective construction. Additionally, Safeco denied coverage for mold in the fountain and laundry areas because mold is expressly excluded under the policy. Safeco also denied coverage for water and mold damage to the exterior walls under the construction defect exclusion.[4]
*5 ¶ 16 On July 17, 2002, Safeco sent Wright a check for $60,000 for loss of use and informed Wright of its decision to deny any further coverage on her three submitted claims.[5]
¶ 17 In September 2002, Wright sued Safeco alleging breach of her insurance contract, bad faith and violation of the Consumer Protection Act. Wright filed a motion for summary judgment asking the court to rule as a matter of law that her insurance policy provided coverage for her claims for water and mold damage. Safeco filed a motion for summary judgment on Wright's bad faith and CPA claims. The trial court ruled the Safeco insurance policy did not provide coverage for Wright's claims for water and mold damages caused by construction defects.[6] The trial court denied Safeco's motion for summary judgment on Wright's bad faith and CPA claims.
¶ 18 Wright appeals the trial court's decision to dismiss her coverage claims. Safeco appeals the trial court's decision to deny its motion for summary judgment on Wright's bad faith and CPA claims.

ANALYSIS
¶ 19 On review of summary judgment, this court engages in the same inquiry as the trial court. Reynolds v. Hicks, 134 Wash.2d 491, 495, 951 P.2d 761 (1998). We review questions of law de novo. Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Right-Price Recreation, L.L.C. v. Connells Prairie Com. Council, 146 Wash.2d 370, 381, 46 P.3d 789 (2002). Only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment. Smith v. Safeco Ins. Co., 150 Wash.2d 478, 485, 78 P.3d 1274 (2003).

Coverage Claims
¶ 20 Wright argues the trial court erred in dismissing her coverage claims for water damage to the fountain area, laundry room and exterior walls. Interpretation of an insurance policy is a question of law. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 730, 837 P.2d 1000 (1992). The determination of whether coverage exists is a two-step process: first, the insured must show the policy covers his loss; second, to avoid coverage, the insurer must show specific policy language excludes the insured's loss. McDonald, 119 Wash.2d at 731, 837 P.2d 1000. We determine coverage by "characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes." Bowers v. Farmers Ins. Exchange, 99 Wash.App. 41, 44, 991 P.2d 734 (2000).
¶ 21 Wright described her claims for the interior fountain area, laundry room area and exterior wall damages as follows:
[Fountain area] The flood occurred May 17, 1999 and the damage is ongoing to the present date. According to [WJE's] Final Report, the cause of the fountain leak was the interior trough drain connections. The cause of the fountain flood was a defective drain.[7]
[Laundry area] I have no knowledge of when the water leak at the hose connection from the water supply piping to the washer first began. The washer's [sic] were operated between September 1997 and May 1999. According to Wiss Janney's Final Report, it appears that the water leak, mold/mildew growth and damage to the interior walls in the washer/dryer area has been ongoing since possibly January 2001 to the present date.[8]

*6 [Exterior walls] I have no knowledge of when the water infiltration through the stucco, windows and window walls first began. However, according to Wiss Janney's Final Report, it appears that the water infiltration through the stucco, windows and window walls, the mold/mildew growth and resultant damage to the exterior walls has been ongoing since probably January 2001 to the present date.[9]
¶ 22 Safeco agreed to pay for the water damages from the interior fountain flooding. Relying on the WJE report, Safeco denied coverage based on the construction defect and mold exclusions in Wright's policy for water and mold damages caused by the fountain leaks from construction defects. According to the WJE report, the damage to the tile flooring around the fountain and the mold and mildew growth in the interior walls near the fountain were the "result of either fountain flooding or a combination of fountain leakage and the flood occurrences."[10] WJE's report also indicated that deterioration of the marble tile appeared to be due to water leaks from the fountain or from the exterior walls. WJE stated the fountain was an "interior water source that is in need of repair or replacement to eliminate water leakage at the interior of the unit."[11]
¶ 23 Safeco denied Wright's claim for laundry area damages based on the construction defect and mold exclusions. WJE in their report concluded the water and mold damages in the laundry area were caused by construction defects. "Our investigation leads us to believe that the deterioration and mold/mildew growth observed at the area behind where the washer and dryer were located is either related to a water leak at the hose connection from the water supply piping to one or both washers or an over flow problem with the washers discharge drain."[12]
¶ 24 Safeco also relied on WJE's conclusion that mold damages to the exterior walls were caused by construction defects to deny Wright's claim for exterior wall damages under policy exclusions for construction defects and mold. WJE concluded that the "[e]xterior water infiltration through the stucco wall assembly appears to be the major contributing factor to the exterior moisture problems observed at the unit."[13]

Construction Defect Exclusion
¶ 25 Wright claims the trial court erred in deciding the construction defect exclusion prevented coverage for mold damage in the fountain, laundry and exterior wall areas. Wright argues the mold damage was proximately caused by water and under the efficient proximate cause rule the "ensuing loss" exception to the construction defect exclusion provides coverage for mold resulting from water damage.
¶ 26 The construction defect exclusion in Wright's policy provides:
We do not insure or cover loss caused directly or indirectly by any of the following excluded perils: ...
13. Planning Construction or Maintenance, meaning faulty, inadequate or defective ... (b) design, specifications, workmanship, repair, construction, renovation, remodeling, ... or maintenance of property whether on or off the insured location by any person or organization. However any ensuing loss not excluded or excepted in this policy is covered.[14]
¶ 27 Under the efficient proximate cause rule, "where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the `proximate cause' of the entire loss," even though other events within the chain of causation are excluded from coverage. Graham v. Pub. Employees Mut. Ins. Co., 98 Wash.2d 533, 538, *7 656 P.2d 1077 (1983); see also McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). If the efficient proximate cause of a final loss is a covered peril, then the loss is covered. Id. at 732, 837 P.2d 1000. The rule is applicable when "an insured risk set into motion a chain of events that included an excepted risk." Krempl v. Unigard Sec. Ins. Co., 69 Wash.App. 703, 705-06, 850 P.2d 533 (1993) (emphasis in original).
¶ 28 Wright argues the water leaks that resulted from the construction defects are an "ensuing loss" under the construction defect exclusion in the policy. Wright contends that under the efficient proximate cause rule, the mold damage is covered because water is the efficient proximate cause of the mold and is a covered event. We disagree with Wright's interpretation of the insurance policy's construction defect exclusion.
¶ 29 The policy excludes "loss caused directly or indirectly by" defective construction.[15] The ensuing loss provision allows coverage for loss caused by defective construction unless the ensuing loss is excluded. Ensuing loss provisions are exceptions to policy exclusions and should not be interpreted to create coverage. Capelouto v. Valley Forge Ins. Co., 98 Wash.App. 7, 16, 990 P.2d 414 (1999). Under the ensuing loss exception to the defective construction exclusion, where defective construction causes water damage that in turn causes mold, the mold damage is covered if it is not specifically excluded by some other provision in the policy. Because Wright's policy contains a provision that specifically excludes damages caused by mold, the ensuing loss provision of the exclusion in Wright's policy does not cover mold damages.[16]
¶ 30 Wright seeks to avoid this conclusion by focusing only on the water leaks and ignoring the construction defects that caused the water leaks. Wright argues that the efficient proximate cause of the mold damage is water leaks, not construction defects that caused the water leaks. But according to the WJE report, the cause of water and mold damages in the fountain, laundry and exterior wall areas were construction defects. The efficient proximate cause rule does not allow a claimant to focus on one covered cause out of a causal chain. The efficient proximate cause is that which "in an unbroken sequence and connection between the act and final loss, produce[s] the result for which recovery is sought." Graham, 98 Wash.2d at 538, 656 P.2d 1077. Wright has not introduced any evidence of a supervening cause that broke the causal connection between the construction defects and the mold damage. WJE's report establishes that construction defects were the efficient proximate causes of the water and mold damage around the fountain, in the laundry area and in the exterior walls. The trial court did not err when it granted summary judgment dismissing Wright's coverage claims because they were excluded under the construction defect exclusion.[17]

Mold Exclusion
¶ 31 Wright argues that the mold exclusion in her insurance policy cannot as a matter of law be interpreted to include the "presence" of mold. Wright relies on Safeco's recent decision to change the mold exclusion language in its policy to comprehensively define the exclusion as the "presence, growth, proliferation *8 or spread of mold."[18] Wright's reliance on the other Safeco policy language is misplaced. The mold exclusion in Wright's policy provides:
We do not insure or cover loss caused directly or indirectly by any of the following excluded perils: ...
4. loss caused by:
...
c. smog, rust, mold, wet or dry rot;....[19]
Mold is also excluded under the new policies if the efficient proximate cause of the loss is excluded.
¶ 32 Wright claims that under the efficient proximate cause rule, the mold exclusion does not apply because the mold damage was the result at the end of a causal chain. The efficient proximate cause rule provides for coverage where an insured loss sets into motion a chain of causation that includes uninsured causes. Graham, 98 Wash.2d at 538, 656 P.2d 1077. Despite Wright's claim that the cause of the mold was non-excluded water leaks, the efficient proximate cause of the mold in the fountain, laundry and exterior wall areas were excluded construction defects.[20]

Water Leaks Exception to Latent Defect Exclusion
¶ 33 Wright argues the construction defect exclusion does not prevent coverage of water escaping from plumbing because the water escape exception to the latent defect exclusion is more specific than the general construction defect exclusion. In insurance contracts, as in other contracts, specific provisions control over general provisions. Foote v. Viking Ins. Co. of Wis., 57 Wash.App. 831, 834, 790 P.2d 659 (1990). The policy states:
We do not insure or cover loss caused directly or indirectly by any of the following excluded perils: ...
4. loss caused by:
a. wear and tear, marring, deterioration;
b. inherent vice, latent defect, mechanical breakdown;
c. smog, rust, mold, wet or dry rot;
d. smoke from agricultural smudging or industrial operations;
e. release, discharge or dispersal of contaminants or pollutants;
f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
g. birds, vermin, rodents, insects or domestic animals, except breakage of glass.
If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.[21]
¶ 34 WJE concluded that the fountain and laundry plumbing leaks were caused by construction defects. Construction defects are not one of the causes of water escaping to which the exception applies.[22]
¶ 35 Wright also argues Safeco's policy interpretation renders the exception for *9 water escaping from plumbing in the latent defect exclusion illusory because the insurance company would "always characterize the latent defect as being a construction defect instead."[23] But here, Wright does not allege, nor does the record indicate, that any of the plumbing defects were latent. A latent defect is "one which could not have been discovered by inspection...." Rottinghaus v. Howell, 35 Wash.App. 99, 108, 666 P.2d 899 (1983). Wright and Fulks knew the fountain leaked from the time it was first used in May 1997 until Wright stopped using it in May 1999. While the record does not indicate whether Wright and Fulks knew the washing machine plumbing was leaking, an inspection similar to the one performed by WJE in 2001 could have disclosed any latent defect. There is no coverage under the exception for water that escapes from plumbing due to latent defects.

Additional Coverage for Sewer or Drain Backup
¶ 36 Wright argues that even if the construction defect and mold exclusions prevent coverage, the additional coverage provision for damages from water backing up through a drain provides coverage for the fountain and laundry area damages. Wright contends there is evidence that both the fountain and laundry area damages were caused by water backing up through drains. Wright also argues that none of the exclusions, including the construction defect and mold exclusions, apply to the additional coverage provisions.
¶ 37 The policy's additional property coverage section provides:
13. Sewer Backup. Damage from water which backs up through sewers or drains or which discharges or overflows from a sump is covered.[24]
¶ 38 Wright contends that her declaration establishes that water backed up through the fountain drain and that the WJE report provides evidence that the laundry area damages were caused by water backing up through a drain. Wright's declaration does not support her argument. Wright in her declaration states that the fountain overflowed because a drain was plugged. She does not mention water backing up through the drain. And while the WJE report refers to water overflowing from the washing machine drain it does not mention water backing up through the drain.[25] We conclude the additional coverage section does not apply.[26]

CPA and Bad Faith Claims
¶ 39 Safeco argues the trial court erred in denying its motion for partial summary judgment on Wright's bad faith and Consumer Protection Act (CPA) claims. Safeco claims its investigation and coverage decisions were reasonable and do not establish bad faith. Safeco also argued that Wright cannot establish the requirements for a CPA claim.[27]
¶ 40 Safeco contends the trial court erred in denying summary judgment on Wright's bad faith claim. Insurers have a duty to deal fairly and in good faith with their insureds. RCW 48.01.030. A denial of coverage that is unreasonable, frivolous, or *10 unfounded constitutes bad faith. Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 560, 951 P.2d 1124 (1998). The test for bad faith denial of coverage is not whether the insurer's interpretation is correct, but whether the insurer's conduct was reasonable. Torina Fine Homes v. Mutual of Enumclaw Ins. Co., 118 Wash.App. 12, 21, 74 P.3d 648 (2003), rev. denied, 151 Wash.2d 1010, 89 P.3d 712 (2004).
¶ 41 Wright argues there is a material issue of fact as to whether Safeco's decision to deny coverage was in bad faith. Wright claims Safeco relied on exclusions to delay paying on covered claims. As previously discussed, Safeco properly denied coverage in reliance on the construction defect and mold exclusions, and there is no evidence Safeco's conduct in denying Wright's claims was unreasonable or in bad faith.
¶ 42 To prevail on a CPA claim, Wright must show: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) that injured the plaintiff's business or property; and (5) that the unfair or deceptive act complained of caused the injury suffered. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 784-85, 719 P.2d 531 (1986). All five elements must be established. Id.
¶ 43 Safeco contends Wright cannot establish that Safeco's alleged CPA violations caused injury to her property. Wright argues the water and mold damages to her property, her loss of use described in the proof of loss and the attorney fees she incurred establish injury to her property under the CPA.
¶ 44 Wright relies on Griffin v. Allstate Ins. Co., 108 Wn.App. 133, 29 P.3d 777 (2001), to argue her damages satisfy the Hangman Ridge injury requirement. Griffin is distinguishable. In Griffin, the court held the insurer's refusal to defend its insured was not justified and its investigation was not reasonable. The court concluded that the plaintiff was deprived of the use of his property as a result of the bad faith of the insurer and there was sufficient injury to satisfy the injury requirement under Hangman Ridge. Here, unlike in Griffin, Safeco properly denied coverage for the damages to Wright's condominium, and Safeco did not act in bad faith. Also unlike Griffin, the damages to Wright's condominium and her loss of use of the condominium were caused by construction defects and mold, not by the actions of her insurer. Wright's loss of use is not a qualifying injury under Hangman Ridge.
¶ 45 In Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash.App. 553, 825 P.2d 714 (1992), the court rejected the argument that costs and fees incurred in pursuing a CPA claim established injury to business or property under Hangman Ridge. The court held that there must be some other evidence to establish injury to the claimant's property and attorney fees from prosecuting a CPA claim alone does not satisfy the injury requirement. As a matter of law, Wright cannot establish injury to her property, and we conclude the trial court erred in denying Safeco's summary judgment motion to dismiss Wright's CPA claim.[28]

CONCLUSION
¶ 46 In sum, the policy's construction defect and mold exclusions preclude recovery for the claimed loss because Wright's damages were caused by excluded construction defects and mold. We affirm the trial court's decision to dismiss Wright's coverage claims. Because there is no evidence that Safeco's denial of coverage was unreasonable, we reverse the trial court's denial of Safeco motion for summary judgment on Wright's bad faith claim. We also reverse the trial court's denial of Safeco's motion for summary judgment on Wright's CPA claim because Wright has not established the Hangman Ridge requirements. We remand for entry of an order dismissing Wright's bad faith and CPA claims.
WE CONCUR: COLEMAN, J., and COX, C.J.
NOTES
[1] The record does not indicate whether Healthy Buildings' January 1995 or September 1996 recommendations were followed.
[2] Wright later claimed the fountain flood was caused by a defective drain in the fountain.
[3] Later in June, Wright moved out of the condominium to another residence and told Safeco she would not make a claim for loss of use at that time.
[4] Safeco also concluded that Wright did not have an insurable interest in the exterior walls.
[5] Safeco paid a total of approximately $477,125 to Wright under her Policy for the fountain flood losses.
[6] The trial court's summary judgment decision was entered as a final judgment under CR 54(b).
[7] CP at 699.
[8] CP at 736.
[9] CP at 744.
[10] CP at 968.
[11] CP at 972.
[12] CP at 969.
[13] CP at 964.
[14] CP at 1016-1017, Policy pgs. 3-4, exclusion 13 (emphasis added).
[15] CP at 1016-1017, Policy pgs. 3-4, exclusion 13.
[16] Wright contends that, under this interpretation of the policy, no damage from construction defects can ever be covered, and the ensuing loss clause is effectively eliminated from the policy. But if an ensuing loss that is not specifically excluded occurred, or if there were a supervening cause that breaks the chain of causation between the construction defect and the final result, coverage would be available under the ensuing loss provision.
[17] Safeco also denied coverage for damages to the exterior walls because Wright did not have an insurable interest in those walls. Wright argues that the insurable interest limitation in her policy does not bar coverage for her claim for damage to the exterior walls of her condominium. Because the mold damage to her exterior walls is excluded under the construction defect exclusion, we need not reach this argument.
[18] See CP at 1042-64; see, e.g., CP at 1048.
[19] CP at 1016, Policy pg. 3, exclusion 4.
[20] Wright also relies on Liristis v. American Family Mutual Ins. Co., 204 Ariz. 140, 61 P.3d 22 (2003), to argue this court should distinguish between losses that are caused by mold and losses that consist of mold. In Liristis, the insured argued that mold caused by a covered event, namely, the water used to extinguish a fire, was covered despite an exclusion in the policy for losses caused by mold. The Liristis court held that "mold damage caused by a covered event is covered under the ... policy in this case. On the other hand, losses caused by mold may be excluded." 204 Ariz. at 143, 61 P.3d 22. The Liristis court focused on the fact that the cause of the mold was a covered event. Here, the cause of the mold was excluded construction defects.
[21] CP at 1016, Policy pg. 3, exclusion 4.
[22] There is no water leak exception to the construction defect exclusion.
[23] App. Closing Br. at 21.
[24] CP at 1021, Policy page 8, additional coverage section 12.
[25] The language Wright quotes in her brief about washing machine related loss being caused by "water backing up through an under-sized drain" does not appear on the page of the WJE report Wright cites.
[26] Because we conclude the additional coverage section does not apply under the facts in this case, we do not need to reach Wright's argument that provisions for additional property coverage are not subject to the exclusions listed elsewhere in the policy.
[27] In Safeco's opening brief, it relies on Ellwein v. Hartford and Indemnity Company, 142 Wash.2d 766, 15 P.3d 640 (2001), and American States Ins. v. Symes of Silverdale, Inc., 111 Wash.App. 477, 45 P.3d 610 (2002), rev'd, 150 Wash.2d 462, 78 P.3d 1266 (2003), to argue summary judgment on Wright's CPA claims should have been granted because Wright failed to establish her CPA claims as a matter of law. In its reply brief, Safeco acknowledges that the summary judgment standard in Ellwein and Symes was clarified in Smith v. Safeco Ins. Co., 150 Wash.2d 478, 78 P.3d 1274 (2003), and argues that it is still entitled to summary judgment on Wright's CPA claims because there are no disputed material facts regarding the reasonableness of Safeco's conduct.
[28] Because Wright has failed to satisfy the last two Hangman Ridge requirements we need not address her arguments that Safeco violated insurance regulations.